IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


RUSSELL SMITH, #219814                    *
            Plaintiff,
      v.                                  *    CIVIL ACTION NO. PJM-08-3302

DAVID MATHIS                              *
MARYAM MESSFOROSH
NANCY BEEHLER                             *
            Defendants.
                              ***


**<u>MEMORANDUM  OPINION</u>**

I.    *Background*

This civil rights action, filed under this Court's 28 U.S.C. § 1343 jurisdiction[1] and the

Maryland Constitution, Articles 19 & 24, was received for filing on December 8, 2008.   Eastern

Correctional Institution ("ECI") inmate Russell Smith seeks delaratory relief and monetary,

"consequential," and punitive damages, alleging that Defendants collectively refused him

treatment for serious medical needs.   It is Smith's contention that in late January of 2008 he

suffered a sports-related injury to his arm, which caused swelling and "later clotted blood."

Paper No. 1.   He states that he was seen by a prison nurse on February 5, 2008, but she indicated

that there was nothing she could do for his complaints of arm, shoulder, and collar bone pain and

prickling sensations in his arm and hand.   Plaintiff asserts that no physician's assistant ("P.A.")

was on duty and the nurse indicated that she would reschedule Plaintiff to see a P.A.

Plaintiff claims that he was seen by P.A. Messforosh two weeks later and was diagnosed

with a major tear to his right bicep tendon and "torn and damaged nerves."   According to the

Complaint Messoforosh asked Plaintiff about his release date and informed him he would need

---

[1]        The Complaint consists of  one count of "cruel and Unusual Punishment" and another
count of "equal protection."

an operation to repair his arm, but "as long as you can bend your arm, they [will] not treat or operate on the arm."   Paper No. 1.   After discussion, Messoforosh stated she would recommend Plaintiff see the medical director and Ibuprofen, 400 mg., was provided.

On April 11, 2008, Plaintiff was examined by Dr. Mathis, who checked the arm's range of motion ("ROM") and strength.   Plaintiff claims that Mathis stated that he would need an operation to repair his arm, as he would otherwise suffer from muscle atrophy in his right bicep and shoulder, but indicated that because Plaintiff could bend his arm surgery would not be performed.   Mathis nonetheless stated that he would put in the paper work for the operation. Naproxen was provided for pain.   Plaintiff alleges that he was again examined by Mathis in August of 2008 and informed that paperwork for surgery would be resubmitted.   He further claims that in October of 2008, he was interviewed by Medical Program Director Beehler who indicated that as an assessment had been made that he still had the ability to bend his arm and lift his shoulder, the standard of care had been met and he was not deemed to be a candidate for surgery.[2]

Plaintiff contends that throughout these sick-call visits no treatment or diagnostic testing was ordered;, he told medical staff of his arm, shoulder, and collar bone pain and numbness in his arm and hand; and he informed staff that due to threats to his life and prior incidents of inmate assault, he was at risk of harm because he could not defend himself without the full use and motion of his arm.   He claims that administrative remedies filed regarding the denial of

---

[2]        Plaintiff infers that surgery will only be afforded when his arm becomes "dysfunctional from muscle atrophy."   Paper No. 1 at 13.

medical care were dismissed by the ECI Warden on the recommendation of Correctional

Medical Services, Inc.  ("CMS") employees.[3]

II.       *Dispositive Filings*

Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary

Judgment, treated as a motion for summary judgment.   Paper No. 20.   Plaintiff has filed an

opposition "rebuttal."[4]  Paper No. 22.[5]   The Court shall rule on these pleadings without oral

hearing.

III.  *Standard of Review*

The Supreme Court has established that "deliberate indifference to serious medical needs

of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth

Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia,* 428 U.S.

153, 173,(1976)).    As an inmate sentenced to confinement, Plaintiff is entitled to receive

reasonable treatment for serious medical needs.  To establish a claim of an Eighth Amendment

violation, he must prove two essential elements.   First, he must satisfy the "objective"

component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9

(1992); *Estelle v. Gamble*, 429 U.S. at 105; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995);

---

[3]       The remedy response noted that Plaintiff had been repeatedly seen by healthcare staff and "assessment indicated minimal difficulty with function other that you could not Power Lift."  Paper No. 1 at Attachment.

[4]       On March 31 and April 8, 2009, Plaintiff filed a Motion and Supplemental Motion for Temporary Restraining Order, asserting that his legal mail was being opened by staff outside his presence, he was being denied access to and research of legal materials, and he was placed in isolation for complaining about the denial of access to courts.  Paper Nos. 14 & 17.  On April 23, 2009, the Court denied injunctive relief, but construed the TRO as a new civil rights action.  Paper No. 19.  A separate case was instituted.  *See Smith v. Tyler, et al.*, Civil Action No. PJM-09-1061 (D. Md.).

[5]       Plaintiff has filed a "Motion for Supplementation of Disclosures" and Motion for Emergency Hearing on Summary of Judgment.   Paper Nos. 26 &  28.  The disclosure motion seeks to supplement Plaintiff's Opposition with additional exhibits and shall be granted.  In light of the ruling entered herein, the Motion for Emergency Hearing shall be denied.

*Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).   He must then prove the subjective

component of the Eighth Amendment standard by showing deliberate indifference on the part of

prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding

that claims alleging inadequate medical care are subject to the "deliberate indifference" standard

outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than

mere negligence [but] is satisfied by something less than acts or omissions for the very purpose

of causing harm or with knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. 825,

835 (1994).  Personnel "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

A defendant cannot be held liable for medical treatment in which they played no role.   Liability

under § 1983 is predicated upon an affirmative link or connection between the defendants'

actions and the claimed deprivations.  *See Rizzo v. Goode,* 423 U.S. 362, 372-73 (1976).  Further,

the Eighth Amendment is not implicated by an inmate's complaint over the adequacy of the care

he or she received when those claims amount to a disagreement over the appropriateness of the

treatment.  *See Veloz v. New York*, 339 F.Supp.2d 505, 525 (S.D.  N.Y. 2004).

VI.      *Analysis*

The nominal information set out in Defendants' Bealer,[6] Messforosh, and Mathis's

materials do not substantially differ from the chronology of facts set out in the Complaint.  They

argue that Plaintiff has received constitutionally adequate medical care and has only voiced his

disagreement with their medical opinion.   Their record shows that Plaintiff filed a sick-call

request, dated February 5, 2008, complaining of a torn muscle in his arm.  He was seen by Nurse

Rathkamp on February 13, 2008.  She noted that there was a hardened area between Plaintiff's

---

[6]      The docket shall be amended to reflect the correct spelling of this Defendant's name.

shoulder and biceps muscle and that there was an area of depleted muscle mass.  Rathkamp referred Plaintiff to a P.A. for further evaluation.

On February 19, 2008, Plaintiff was seen by P.A. Messforosh.  He explained the origin of his injury and noted that he was experiencing increased pain, was not able to contract his muscle, and his muscle formed into a ball.   Defendants claim that Plaintiff denied having any paresthesia (numbness/tingling) of the arm.   Messforosh's assessment was that Plaintiff had a possible rupture of the tendon of the biceps on his right arm, loss of muscle function, and retraction of the belly of the muscle that created a bulge and deformity.   She noted that no x-ray was indicated at that point in time.   Messforosh prescribed Motrin for pain and told Plaintiff to follow-up in three weeks.  Dr. Mathis reviewed Messforosh's assessment and plan of care, and he agreed with the course of treatment.

On April 11, 2008, P.A. Bruce Ford evaluated Plaintiff for dermatitis and tinea. Defendants claim he did not offer any complaints to Ford about his arm during the appointment. On April 26, 2008, however, Plaintiff filed another sick-call encounter form complaining of pain from a torn biceps.  A nurse evaluated Plaintiff, gave him ibuprofen pursuant to nursing protocol, and noted in the medical chart that she would discuss Plaintiff's medical care with Messforosh. On April 29, 2008, Messforosh ordered a right-shoulder x-ray and referred Plaintiff to Dr. Joseph Inzerillo. [7]

Defendants contend that Plaintiff offered no further complaints about his arm until August 15, 2008, when he was seen by Dr. Mathis.   He informed Mathis that he was unhappy with his inability to lift weights and that he had discomfort in his rights shoulder when he put his arm above his head at night to sleep.  Plaintiff also expressed concern about his ability to defend

---

[7]       Defendants do not indicate who Dr. Inzerillo is or if Plaintiff saw this physician.  Further, there is no showing that Plaintiff received an x-ray or any other diagnostic test

himself in the prison environment.  Mathis's objective examination showed a prominent and bulging right posterior biceps, particularly when Plaintiff flexed his elbow.   Mathis noted that Plaintiff had a full ROM in his right shoulder and elbow and that he was able to do pushups, although he voiced subjective complaints of shoulder discomfort when performing the exercise. Mathis did not observe any tenderness at the acromion, coracoids,[8] or of the remaining biceps tendon.   Mathis concluded that Plaintiff's arm was fully functional, but not to the degree that Plaintiff felt would be proficient for power lifting.

Defendants claim that although there was no evidence that the condition of Plaintiff's arm caused any problem with his activities of daily living ("ADL"), Mathis submitted an orthopedic surgeon consultation request to Wexford Health Sources, Inc. ("Wexford"). Wexford denied the consultation request because Plaintiff's biceps injury did not interfere with his ADLs.  Defendants state that Plaintiff offered no further complaints to the medical staff about his arm following his appointment with Mathis on August 15, 2008.

Plaintiff filed an administrative remedy procedure ("ARP") grievance on September 29, 2008, complaining about the medical treatment for his arm.  He was interviewed by Nurse Bealer concerning his ARP.   By affidavit, Bealer claims that her duties include the education, evaluation, and scheduling of the nursing staff at ECI.   She is also responsible for reviewing ARPs that concern inmate complaints about medical staff.   Bealer advised Plaintiff that she had investigated his complaints, and that the evaluations and treatment received for his arm injury were appropriate.

---

[8]     The acromion is the lateral end of the spine of the scapula which projects as a broad flattened process overhanging the glenoid fossa; it articulates with the clavicle and gives attachment to part of the deltoid and trapezius muscles.  Its lateral border is a palpable landmark ("the point of the shoulder")   *See Stedman's Medical Dictionary* 18 (27th ed. 2000).  The coracoid "process" is a curved process arising from the upper neck of the scapula and overhanging the shoulder joint.   *See* http://medical-dictionary.thefreedictionary.com/coracoid+process.

For his part, Plaintiff's Opposition again alleges that no treatment, x-ray, or referral was ordered and asserts that Defendants "turned a blind eye" to his symptoms. He attempts to refute the medical record and affidavits offered by Defendants by claiming that the record offered is incomplete and affidavits do not reflect the full scope of his subjective complaints regarding his injury. His attachments, including affidavit and "epitome," discuss the scope of his pain and the overall functionality of his arm.

The Court has construed Defendants' dispositive pleading as a motion for summary judgment and shall deny same. The undersigned finds that Plaintiff has set out more than a mere "disagreement" with Defendants' care. There is no dispute that Plaintiff has a torn bicep, with depleted muscle mass. The medical documents show a prominent and bulging right posterior bicep. Plaintiff has complained of pain, numbness and tingling, and limited ROM in his arm. Defendants did visually inspect the area for ROM and strength, but Plaintiff states that they are ignoring his subjective symptoms. In any event, there is no evidence they conducted even the bare minimum of diagnostic testing that they themselves ordered to confirm or document the precise nature of Plaintiff's injury. Further, there is no discussion of a treatment or medication plan or course of follow-up care and prognosis and no discussion regarding the need for specialist consultation and/or surgery. Defendants appeared to minimize the injury based upon their opinion that Plaintiff is a "power lifter" and is only concerned that he cannot have use of his arm to continue to engage in that arduous activity.[9] Moreover, given Defendants' actions or inactions regarding Plaintiff's injury, there was a need for them to directly refute his verified

---

[9]     Defendants did not think the injury so minor, however, as they did refer Plaintiff to an orthopedic surgeon. Plaintiff correctly observes that the supporting medical record submitted by Defendants regarding the referral is incomplete and there is no documented evidence that the referral was received and disapproved.

statements that they questioned the length of his confinement, thus strongly putting into issue whether there is an economic disincentive for providing him additional care.

 V.  *Conclusion*

For the aforementioned reasons, Defendants' dispositive motion, construed as a motion for summary judgment shall be denied.  Plaintiff is granted additional time from the entry date of this Order to seek the appointment of counsel.  A separate Order follows.


                                                            /s/
                                                      PETER J. MESSITTE
January 26, 2010                              UNITED STATES DISTRICT JUDGE